No. 29.—JUDGE, a slave, plaintiff in error, *vs.* THE STATE OF GEORGIA, defendant.

[1.] When a Jury have been regularly drawn and summoned for the trial of a slave, charged with a capital offence, according to the Statutes of this State, such slave is entitled to be tried by such Jury, and the Justices of the Inferior Court have not the right, capriciously to discharge such Jury, without some good and legal cause, and summon any other Jury for the trial of such slave.

[2.] It is no objection to a Juror drawn and summoned for the trial of a slave, who appeared and answered to his name, that the summons was left at his *residence*, and not served on him *personally*.

[3.] It is no objection to a Juror, because there was a mistake as to his *middle* name; who, on the name of Jesse McClay Evans being called, appeared and answered, and said that his name was Jesse McKinnie Evans—the mistake was properly corrected and the Juror impannelled.

[4.] On the trial of a slave, under the Statutes of this State, for a *capital* offence, the warrant and the preliminary proceedings had before the committing Magistrates, alleged in the indictment, ought to be given in evidence on the trial, so as to show that the Justices of the Inferior Court properly had *jurisdiction* of the offence with which the slave is charged.

[5.] Upon the trial of a slave for a capital offence, when the evidence on the part of the prosecution has closed, and the cause submitted to the Jury on *both sides*, farther evidence cannot be admitted in behalf of the prosecution against the defendant.

*Certiorari*, from a Special Term of the Inferior Court of Houston County. Trial and decision had and made 30th of July, 1849. *Certiorari* refused by Judge FLOYD, September, 1849.

A slave, named Judge, the property of Robert Freeman, was charged with, tried, convicted and sentenced for the crime of murder. On the trial, prisoner's counsel objected—

1st. To the array, because a former Jury had been regularly drawn and summoned to try said negro, on the same charge, which Jury had been discharged, (and, so far as now *appears*, capriciously discharged.)

2d. Because the Sheriff by his return on the *venire*, showed that he had legally served only twenty-three instead of twenty-four Jurors—one Juror having been served by a subpœna left at his residence instead of personally, and the Sheriff was then allowed to correct his return, and call said Juror served.

3d. Because Jesse *McKinnie* Evans appeared and answered, when the name of Jesse *McClay* Evans was called—he stating that there was a mistake as to his name.

4th. After State's counsel had said he closed for the present, and prisoner's called on to proceed, and declined introducing any evidence, and the case thus submitted to the Jury, prisoner's counsel asked the Court to charge the Jury, that they must acquit the prisoner, because the warrant and other preliminary proceedings before the Magistrates, had not been offered in evidence to support the allegations in the indictment; which also was refused, and the State allowed then to introduce said evidence; and after lawful notice of the intended application for *certiorari*, it was applied for, and refused, as above stated.

GILES and POWERS & WHITTLE, for plaintiff in error, cited the following authorities—

*Prince's Digest,* 791, 793.   *Joy on Conf. and Challenge,* 180. 3 *Black. Com.* 355.   2 *Coke on Lit.* 218.   *Starkie on Ev.   Arbouin vs.   Willoughby,* 1 *Marshall,* 477, (4 *E. C. L. R.* 348.) *Lindsay vs. Wells,* 3 *Bingh. N. C.* 777, (32 *E. C. L. R.* 327.) *Coles vs. Green,* 1 *Bingh.* 426, (8 *E. C. L. R.* 36.)   *Mary vs. The State,* 5 *Miss.* 71.   *Drake vs. Boyce, Riley,* 222.   *Brown vs. Giles,* 1 *Carr. & P.* 118, (11 *E. C. L. R.* 337.)   *Rex vs. Bazely,* 19 *E. C. L. R.* 353.   *Rex vs. Hillditch,* 5 *Car. & Pay.* 299, (24 *E. C. L. R.* 330.)   *Rex vs. Stimpson,* 2 *Car. & Payne,* 415, (12 *E. C. L. R.* 197.)

ROGERS, for defendant, cited—

*Prince's Digest,* 789 *to* 793.   1 *Chit. Crim. Law,* 299, 300, 511, 512, 556.   *Stark. Crim. Pl.* 331, 332, 290, 291, 273 *to* 275. 2 *Mass. R.* 172, 173.   1 *Wheeler's Cr. Cases,* 222.   2 *Ib.* 96 *to* 101.   *Graham on New Trials,* 24 *to* 30.   5 *John. R.* 83, '4.   3 *Peters,* 6.   14 *Ib.* 327.   *Bacon's Abr. Misnomer, a.* 2 *Russell on Crimes,* 705.   1 *Phil. Ev.* 167.

*By the Court.*—WARNER, J. delivering the opinion.

The error assigned to the decision of the presiding Judge of the Court below is, the refusal to sanction a *certiorari,* presented

Judge, a slave, *vs.* State of Georgia.

in behalf of the negro slave, Judge, who had been tried for the offence of murder, before the Justices of the Inferior Court of Houston County, and found guilty.

There are several grounds stated in the petition for *certiorari*, which appear to be sustained by the bill of exceptions signed by the Justices of the Inferior Court.

[1.] The first ground taken in the *certiorari* is, that the Inferior Court discharged the first panel of the Jury drawn to try the slave.

It appears that a Jury was *regularly* drawn and *summoned* for the trial of the slave, for the offence of murder. The 8th section of the Act of 1811, required the Justices of the Inferior Court to draw a Jury for the trial of slaves, at their *regular* terms. *Prince*, 790. The Act of 1811 was amended by the Act of 1816, which authorizes a majority of the Justices of the Inferior Court forthwith to draw a Jury, after being notified of the commitment of a slave charged with a capital offence, of not more than thirty-six, nor less than twenty-six Jurors. *Prince*, 792.

According to that part of the 8th section of the Act of 1811, which was not repealed by the Act of 1816, twenty-four of the Jurors so drawn and summoned, according to the Act of 1816, are to be impannelled for the trial of such slave. The 9th section of the Act of 1811 declares, that the owner or manager of the slave, shall have the right of challenging seven of said number, (that is, of the twenty-four,) and the said Court five on the part of the State, and the *remaining twelve shall proceed to the trial of such slave. Prince*, 791.

The construction which we give to the Act of 1816 is, that it was not intended to alter the number, twenty-four, which was to constitute the panel out of which the Jury were to be selected for the trial of the slave, as provided by the 8th section of the Act of 1811. The Act of 1816 requires not less than twenty-six Jurors to be drawn and summoned—twenty-four of whom will constitute a legal panel for the trial of the slave.

It appears a Jury had been *regularly* drawn and *summoned* for the trial of the slave Judge, and were discharged by the Court without any cause, so far as the record discloses. Without some good and legal cause shown, the slave was entitled, under the law, to have been tried by a Jury, to be selected out of the twenty-four impannelled out of the twenty-six so regularly drawn and

summoned for that purpose. The 9th section declares, that after the owner or manager of the slave, and the Court, shall have exercised the right of challenge given to them respectively, the remaining twelve of the Jury *shall proceed to the trial of such slave.*

[2.] The second ground is, that only twenty-three of the twenty-six Jurors drawn, were duly summoned to attend the Court; that one of the Jurors, (Wimberly,) was summoned by leaving the subpœna at his *residence.* The Juror, however, appeared, and whatever excuse the want of *personal* service might afford the Juror, if proceeded against for non-attendance, it cannot avail the prisoner as an objection to his competency.

[3.] The third ground taken in the *certiorari* is, that when the names of the Jurors were called over by the Clerk, he called the name of Jesse McClay Evans, when Jesse McKinnie Evans appeared and answered, and said there was a *mistake* in his name. The middle name of the Juror was properly corrected, and he was rightly impannelled as a Juror.

The fourth ground of error alleged in the *certiorari* is, that after the evidence was closed on the part of the prosecution, and the cause was submitted to the Jury on *both sides,* the counsel for the prisoner then asked the Court to instruct the Jury, that they must find the prisoner not guilty, on the ground that the proceedings had before the committing Magistrates had not been given in evidence to the Jury, nor any of them, which instruction the Court refused to give, but, on motion of the counsel for the prosecution, the Court allowed the warrant and all the other preliminary proceedings set forth in the indictment, to be read in evidence to the Jury.

[4.] The warrant and the proceedings had before the committing Magistrates, as alleged in the indictment, ought to have been given in evidence on the trial of the slave, so as to have shown that the Justices of the Inferior Court had *jurisdiction* to try the slave for the *alleged offence.* See the Act of 1811, *Prince,* 789, 790; also, the 1st section of the Act of 1821, *Prince,* 799. A slave cannot, under the laws of this State, be put upon his trial for a *capital* offence, before the Justices of the Inferior Court, until he has been first brought before three Magistrates, and after an investigation had before them, they shall determine that the crime with which such slave is charged, is one for which he, she

or they ought to suffer death, then to be committed by the Magistrates, and the Justices of the Inferior Court notified thereof, who take jurisdiction of the offence. These preliminary proceedings before the Magistrates, under the Statutes of this State, before a slave can be put upon his trial for a *capital* offence before the Justices of the Inferior Court, would seem to be as indispensably necessary, as that a free white person should have an accusation for a capital, or other infamous crime, preferred against him by the presentment or indictment of a Grand Jury. In the case of a slave, the accusation is first made before the Magistrates of the County in which the crime was committed, before he is put upon his trial for a capital offence. In the case of a free white person, the accusation is made by a Grand Jury of the County in which the offence was committed.

[5.] We are not aware of any rule or practice, on the trials of criminal causes, which would authorize the prosecution to introduce evidence against the defendant, after the cause has been submitted to the Jury, on both sides. Such a proceeding, it is believed, is unprecedented in the trial of criminal causes in this State, and from the case of *Brown vs. Giles*, (11 *Eng. Com. Law Rep.* 337,) it would seem to be contrary to the practice in England. Such a practice would operate as a surprise on the defendant, whose witnesses would be dismissed when the testimony closed, and he would, in all probability, regulate his testimony by that of the prosecution, to say nothing of the danger of *perjury*, when a material fact was to be supplied, to make out the offence charged in the indictment. It is true, there would be no danger of perjury in this case, because the evidence was in writing; but if one species of evidence may be admitted after the prosecution have closed their testimony, any other may, with equal propriety, be admitted. In this case the defendant introduced no testimony. We are, therefore, of the opinion, that the *certiorari* ought to have been sanctioned on the first and fourth grounds taken therein, and it is so adjudged by this Court.

Let the judgment of the Court below be reversed.