BENJAMIN F. GRINAD and ARCHIBALD BENTON, plaintiffs in error, vs. THE STATE OF GEORGIA, defendant in error.

[1.] The presumption is in favor of the regularity and legality of all proceedings in the Superior Court.  Consequently, the Grand Jury finding a bill of indictment, will be presumed to have been duly constituted, unless the contrary appears from the bill of exceptions or the transcript of the record.

[2.] Upon the enactment of a new penalty for an offence, the former penalty is not superceded until the statute prescribing the new one takes effect; and this, under the Code, cannot happen until the statute has been duly published.  Consequently, horse-stealing committed in the county of Coweta on the 19th of March, 1866, was unaffected by the Act of the 17th of the same month, authorizing the infliction of capital punishment.

Grinad and Benton vs. The State.

[3.] The Act of February 5th, 1866, empowering the Judges of the Superior Courts to hold special terms at discretion, is Constitutional. The provision in the Constitution for holding the Courts at stated :times appointed by the General Assembly, relates to the regular terms only.
[4.] Remarks on the delegation of legislative power.

Simple Larceny. In Coweta Superior Court. Tried before Judge Featherston. At May Special Term, 1866.

At a special term of Coweta Superior Court, appointed by the Judge, and held under the Act of February 5th, 1866, the grand jury returned a bill of indictment against the plaintiffs in error, charging them with stealing three horses on the nineteenth of March, 1866.

After the traverse jury were impanneled and sworn, the prisoners demurred to the indictment on the grounds:—

1. That the grand jury who found the bill were illegally impanneled; for, that they were drawn for the last regular March Term, and were not either the jury of a previous term, or a new jury for the special term, according to the Act authorizing special terms.

2. That there was no law punishing the offence charged, at the time charged.

3. That the Act of the Legislature authorizing Judges of the Superior Courts to hold special terms at discretion, is unconstitutional and void.

It does not appear from the record sent up to the Supreme Court, how the grand jury was constituted, except that the charge of the court to the traverse jury declares that the' members, or a majority of them, served as grand jurors at the last regular term of the court.

The demurrer was overruled; and this is complained of as error.

Powell, for plaintiffs in error.

Solicitor General, for The State.

HARRIS, J.

This case has been argued by briefs filed with the Clerk.

It seems that in the Superior Court of Coweta county, the plaintiffs in error demurred to the indictment found against them, on three several grounds, viz: "1st. That the jury finding the indictment were improperly and illegally empanneled, for that the jury was the jury drawn for the last regular March term of this Court, and was not the jury of a previous term, or a new jury drawn for this special term, according to the law authorizing special terms."

All facts pertinent to any objection taken to the legality of any proceeding in the Superior Court, by the uniform practice of this Court, is required to be fully stated in the bill of exceptions approved by the Judge who tried the cause; or, if documentary and forming a part of the record, should be included in the transcript—otherwise, the presumption will be in favor of the regularity and legality of the matter complained of. Neither the bill of exceptions nor transcript of the record, in this case, presents the facts necessary to the determination of this ground of demurrer.

2. "That there was no law punishing the offence charged, at the time charged."

The larceny of the horses is charged and proven to have been on the 19th of March, 1866.

The *punishment* for this species of larceny was altered by the Act of the General Assembly, of the 17th of March, 1866. The latter Act, not having been published after its approval by the Governor, as required by the Code, a sufficient length of time for its provisions to become known, in tenderness to culprits, for the reason mentioned, is not permitted to include them. The old law making horse-stealing a crime and punishable by imprisonment, was not *annulled* by the punishment being altered, but continues operative on all crimes of the kind committed before the alteration of punishment, until the law making the alteration goes into effect by the

necessary time of publication.   Then, and not till then, does the *punishment* prescribed by Act of 17th of March, 1866, supercede the punishment prescribed by the old law.

We hold that this ground of demurrer was properly overruled.

The third groud was, " That the act of the Legislature authorizing Judges of the Superior Courts to hold special terms at discretion, was unconstitutional and void."

It is gravely argued that it is the right and duty of the Legislature to fix, by law, the times of the sessions of special terms; and that it has delegated a power which *it only* can exercise.

If the letter of the clause of the State Constitution (12 sec. 4 art.) should alone be considered, at first view the objection would appear to have a force to which it is not entitled. Viewed in the broader light of the power existing in the Supereior Courts, and inherent in their very nature, and not springing from constitutional or legislative grant—that of holding, from time to time, for dispatch of business, adjourned terms—it strikes us, that, properly speaking, there is no delegation of power, at all, in this particular.

Courts are adjourned, over and over, and as often as the exigencies of the service may require, juries retained, and, wherever, from non-attendance, either are incomplete, the tales is resorted to to fill them up.   Parties, attorneys, and witnesses are held to as strict an attendance as at a regular term, and all kind of cases are tried as at a regular term. Now, the times of these sessions of adjourned Courts are not appointed or *fixed* by the Legislature, but are held at the discretion of the Judge.   With the power to draw new juries, the Judge of the Superior Court would have had more power holding an adjourned Court than he has holding a special Court.

The objection that the legislative delegation to the Judges, of the fixing of the time of holding these special terms, is unconstitutional, is not, even looking to the letter of the clause referred to, within it.   The *fixing* of the times of the sessions of

35

the Superior Courts, has reference to its *regular* terms only. The Constitution contemplated that there might arise a necessity for more regular terms than two for each county, annually. Should the 'Legislature deem four regular terms needful, *in such case*, we should expect it, under the duty imposed by the section under consideration, to declare the stated times when the Courts should sit.

The special terms to be held at the discretion of the Judges do not originate under this section, and are not in any wise to be controlled by it.

The athorization of them springs from the broad grant of power to the General Assembly, to make all laws which they shall deem necessary and proper for the welfare of the State, not inconsistent with the Constitution of the State, or that of the United States. The grant to draw new juries is conferred under this power.

We have been referred, by counsel of plaintiff in error, to the cases of *Franklin Bridge Company vs. Wood*, 14 *Ga.* 8, and to case of *Mealing* 14 *Ga.* 596, as denying the right of the Legislature to delegate their powers.

What is said in those cases, it will be remarked, is obiter. As a general proposition, its truth will not be questioned : indeed, when we scan the distribution of the powers of the State amongst its departments, the prohibition of the exercise of any power properly belonging to one by either of the others, it seems to be a necessary corollary. Yet, our past history furnishes many instances of delegations of power, which, whether rightful or not, was acquiesced in. It is sufficient to mention the power of taxation—the most important of all powers, most easily abused, and especially when delegated without any limitation as to subjects or amounts—as has been often done to counties and to municipal corporations. Until the Constitution of 1865, these careless and unrestricted delegations of power to tax had no other authority upon which to stand but usuage and acquiescence.

We will not, in this case, as we deem it unnecessary to its

correct decision, discuss a question of such magnitude as that raised by counsel.

For the reasons aforesaid, we affirm the judgment below.