IN THE

# Supreme Court of Georgia,

## AT ATLANTA.

## SEPTEMBER TERM, 1882.

PRESENT—JAMES JACKSON, . . . . . CHIEF JUSTICE.
       MARTIN J. CRAWFORD, . . ASSOCIATE "
       ALEXANDER M. SPEER, . .   "     "
       *SAMUEL HALL, . . . . . .   "     "

## WILLIAMS vs. THE STATE OF GEORGIA.

[This case was argued at the last term, and the decision reserved.]

1. A counter-showing may be made to a motion to continue a case, whether in writing or by parol.
2. While on a counter-showing to a motion for a continuance on account of the absence of a witness it is not permissible to show that the facts which the absent witness would swear, if present, are not true, yet it may be shown that the absent witness would not in fact give such testimony as the movant attributes to him. Such testimony tends to contradict the party moving for a continuance, not the absent witness.
3. Motions for a continuance are addressed to the sound discretion of the court, and his ruling will not be disturbed by a reviewing court, unless such discretion be abused.
4. Where affidavits have been introduced by way of counter-showing to a motion for continuance, the cross-examination of the witnesses so swearing should be limited to the subject matter embraced in the affidavits, and not be left wholly unrestricted.
(a.) If they knew facts of importance to movant not embraced in their

---

*Justice Speer's term of office having expired, Justice Hall succeeded him. He began to preside January 8th, 1883.

v 69—2

original affidavits, additional affidavits could easily be procured to support the motion.

5. Where error is assigned in overruling a plea in abatement, based on the ground that the grand jurors who found the true bill and the traverse jurors who tried the case had not been legally summoned, because "no precept has ever been issued or ordered as the law directs for the summoning or attendance of jurors," such precept as was in fact issued should be set out, that the court may judge of its legality. The precept required by law is very simple; and in the absence of anything to show the contrary, service will be presumed when the clerk hands the list to the sheriff.

(*a.*) Is the mode of equalizing jury duty, which does not effect the impartiality of those summoned, a proper matter for plea in abatement? *Quære.*

(*b.*) This court will not inquire into the legality of excuses made by grand jurors who were summoned at the time the true bill was found, on exception to the overruling of a motion for new trial under such indictment.

(*c.*) If a defendant in a criminal case can except to a grand juror at all, on the ground that he has formed and expressed an opinion, it should be done before the true bill is found, and not on the trial thereunder. Certainly so where the defendant had notice of the pending consideration of his case by the grand jury by reasons of having been previously placed under bond.

(*d.*) That the ordinary of the county acted as solicitor *pro tempore* in drawing and signing an indictment, is not good ground for a plea in abatement; neither is it that such solicitor *pro tempore* was the employed counsel for the prosecution of the case.

6. Where jurors had been summoned through the instrumentality of the clerk and sheriff, a challenge to the array on the ground that no legal precept had been issued, and served, was properly overruled, where it did not appear what sort of precept had in fact been issued and served, or that there had been none at all.

7. A defendant in a criminal case charged as principal in the second degree, may be tried before the principal in the first degree.

(*a.*) Where the verdict found the defendant guilty as a principal in the second degree, it does not matter that he was also charged as an accessory in another count.

8. Where an indictment charged a defendant in different counts with murder as principal in the first degree, as principal in the second degree, and as accessory before the fact, the state was not obliged to elect on which count it would try him.

9. The judgment of the court as a trior is final, and will not be reviewed by this court on a motion for a new trial.

10. The middle name of a juror or the initial of it is immaterial, and if the right man be summoned, a mistake in his middle initial will not be ground for discarding him.

11. On a trial for murder, the question of motive being in issue, it was competent to show that deceased claimed to know facts connecting the prisoner with a larceny, and that he was therefore interested in removing her.

12, 13. The facts that on the second night after the killing, when search was being made for the prisoner, and he was suspected, defendant staid at a house other than his own, and with the owner of which he was not on friendly terms, that he was armed, and that he said "the way things are working, they are going to throw everything" on him and his brother, were admissible.

14. The motive of a defendant charged with murder being in issue, statements of the deceased made before the killing implicating defendant in the commission of a larceny, could be proved by parol, though made in giving testimony on a committing trial, in which the substance of the testimony was reduced to writing.

(*a.*) Is the substance of the testimony taken down by a magistrate at a committing trial better evidence of a statement made by one of the witnesses than the parol testimony of a reliable witness who was present ? *Quære.*

(*b.*) If the brief were better evidence, we cannot say that the presiding judge erred in holding that its loss was sufficiently proved to admit parol testimony.

15, 16, 17. The restriction of a wife's testimony in a criminal case is confined to giving testimony on issues involving the guilt of her husband. Although he may be indicted jointly with others, yet on the several trial of one of the others she may testify as to matters not affecting his guilt or innocence.

(*a.*) Semble, that if an accomplice gives testimony as such, his wife may corroborate him.

18, 19. One question being as to the motive for a killing alleged to have been done by defendant, it was competent to show that money had previously been stolen, and that the deceased charged defendant and his brother with the larceny; but it was not competent to enter into a full trial as to the guilt or innocence of defendant of such crime on the trial of the indictment for murder.

20, 21, 22. If a request has been substantially given in charge by the court, a reversal will not be granted because the court did not repeat the charge in the exact language of the request.

(*a.*) A plaintiff in error must specify the errors complained of. To set out eight pages of requests, and say that each request should have been given, is not sufficient.

(b.) If, on a former investigation of a case, a witness has knowingly and wilfully sworn differently on material points from her testimony on the present trial, her testimony would be unworthy of credence unless properly corroborated. But, if the former testimony was given under duress, and impelled by fear for her life, such testimony would not be wilful, and would not impeach her evidence now given.

(c.) While proof of an unlawful killing may not of itself be sufficient to corroborate the testimony of an acomplice on a murder trial, yet this with other facts might be sufficient, and the jury would be authorized to consider such corroborating facts.

23. Where one was indicted both as an accessory and as principal in the second degree, and was found guilty on the latter branch of the case, an erroneous charge relating solely to finding him guilty as an accessory, did not necessitate a new trial.

24. No error is distinctly set out in this ground, and it cannot be considered.

25. Presence and participation in an unlawful killing will be sufficient to warrant a conviction of murder, unless the defendant shows something to exempt him from the operation of the rule. In this case nothing was shown.

26, 27. Proof of the *corpus delicti* is sufficient corroboration of a confession of murder to warrant a conviction, especially where the confession is such as could not have been made without the presence of the prisoner at the scene of the crime.

28. When a witness has been impeached by testimony which the jury believe, his evidence should be rejected, unless corroborated on a material point. But whether he be impeached or not is for the jury to say; and though others contradict him, the jury may believe him in preference to them. Even though he swore falsely on a former trial, they may still believe him, if he then swore under duress.

29. The verdict is sustained by the evidence, and the charge as a whole is full and fair.

September 5, 1882.

Criminal Law. Evidence. Practice in Superior Court. Jurors. Continuance. Husband and Wife. Practice in Supreme Court. Impeachment of Witnesses. Before Judge FLEMING. Decatur Superior Court. August Special Term, 1881.

An indictment was found against Robert H. Durham, John W. Williams and Walter Williams. The first count

charged all three with murder in the first degree; the second count charged John and Walter Williams with murder in the second degree, and the third count charged them with being accessories before the fact. John Williams being placed upon trial, moved for a continuance on the ground of popular excitement; because defendant and his counsel had not time or opportunity for the preparation of his defence, he having been committed to jail on July 29, 1881, and the court having assembled on August 22 following; because, if given time, he could impeach certain material witnesses for the state. [Here he stated what the absent witnesses would testify.] After the showing and counter showing, the motion to continue was overruled.

The defendant plead in abatement that some of the grand jurors who found the bill had formed and expressed an opinion adverse to defendant; because the court excused one of the regular grand jurors without legal excuse or authority, and supplied his place with a talesman; because the bill of indictment was signed by Maston O'Neal, as solicitor-general *pro tem.*, he being at the same time the ordinary of Decatur county and being also employed for the prosecution; and because the court has never organized according to law, " nor are there any lawful jurors, either grand or petit, in this, to-wit: that no precept has been issued or ordered as the law directs for the summoning of jurors at the special term, nor has any juror, either grand or petit, been summoned or sworn under a precept as required by law." On demurrer the plea was stricken.

Defendant challenged the array of jurors on the same ground as that set out in the plea. On demurrer the challenge was overruled.

Defendant objected to two of the jurors: to the first, because his name was Jesse N. Maxwell, while it was put into the jury box Jesse M. Maxwell. It was shown that the juror summoned was the man intended, and that there

was no such person as Jesse M. Maxwell in the district. The objection to the other juror was that he had formed and expressed an opinion. The juror swore that he said that if the man was guilty, of course he should be punished, but that he did not say that defendant was guilty. The objections to the jurors were overruled.

Defendant pleaded not guilty. It is unnecessary to set out the evidence in detail. It showed, in brief, the following facts : Mrs. Brockett was murdered; she was killed by some one standing outside of her door and firing upon her with a shot gun. Tracks, as of a man in his stocking-feet, were found leading away from the door, and some of the witnesses testified to finding two tracks at a little distance from the house, leading away in the same direction. A gun was found at the residence of Walter Williams bearing evidences of having been recently discharged. A night or two after the killing, and while search was being made for the murderer, John Williams, with his family, spent the night at the house of one Bailey, with whom he was not on friendly terms. He had a pistol and a bottle of laudanum, and while there said that "the way things are working they are going to throw every thing" on him and his brother. While in jail, he and Walter Williams sought to suborn witnesses to testify in their favor. At some time prior to the killing (the evidence does not certainly fix the time) a very hostile feeling had arisen between the deceased and the Williamses. The deceased had killed a beef, which appears to have belonged to one of them, and a case arose in regard to it. Some money was stolen from one Donaldson, and the deceased, on her committing trial for killing the beef, openly charged that they were implicated in the theft, and that her life had been threatened ; and it also appears that they had made certain admissions in regard to it. They sought to have her removed to Texas, but failed to do so. In addition to this, Robert Durham, the principal, turned state's evidence, and testified that he did the actual shooting, being induced

to do it by the Williamses under promises of reward ; that the gun was furnished by Walter Williams; that John Williams accompanied him to the scene of the crime, and waited for him at a little distance from the house ; that some distance therefrom they took off their shoes and proceeded in their stocking feet; that after the shooting they both went off together, put on their shoes, and went to Durham's house where they remained all night; that he had been paid only a small amount, as they were afraid he would be discovered if he had too much money. Mrs. Durham, the wife of this witness, testified that Williams was at their house on the night of the killing. He said that he had done the worst thing that could be done on earth ; that he had killed the widow Brockett; he said that deceased was praying " Lord have mercy on her and on every body in the world." It was also sworn, by another witness, that when the deceased was found in a dying condition, immediately after the shooting, she was making use of the language stated above. Mrs. Durham further stated that she had testified differently during the coroner's inquest, as she thought her life was at stake.

The jury found the defendant guilty, and recommended that he be imprisoned for life. He moved for a new trial, on the following grounds:

(1.) Because the court erred in permitting the state to make any counter-showing whatever to the defendant's motion for a continuance, it having been in writing under oath, and defendant having objected to such counter-showing by the state, which objection the court overruled.

(2.) Because the court erred in permitting the state, over the objection of defendant's counsel, on counter-showing to the motion for continuance, to attempt to disprove the allegations of the showing for continuance, as to what certain witnesses would testify. [The defendant's motion to continue rested in part on the absence of witnesses, and he stated what they would testify. The state was allowed to rebut this by showing that they would not so testify.]

(3:) Because the court erred in overruling defendant's motion for a continuance.

(4.) Because the court erred in overruling defendant's special plea in abatement.

(5.) Because the court erred in sustaining the demurrer to defendant's challenge to the array of the panel of jurors put upon him.

(6.) Because the court erred in permitting the state, over the objections of defendant, to put him on trial before the case of Robt. Durham, the principal, as charged, was disposed of, this defendant being charged in one count as a principal in the first degree, and in the second count as principal in the second degree, and in a third count as an accessory before the fact.

(7.) Because the court erred in refusing, on motion of defendant, to require the state to elect upon which count or counts they would proceed against him, and in putting defendant on trial on all the counts in the indictment.

(8.) Because the court erred in holding, as a trior and judge, that J. O. Horthorn was a competent and impartial juror. [Objection was made to the juror on the ground that he had formed and expressed an opinion. He stated that he had said if the parties were guilty they should be punished, but denied having expressed an opinion as to their guilt.]

(9.) Because the court erred in refusing to allow defendant's counsel to question the witnesses for the state, on their cross-examination as to the counter-showing of the state to defendant's motion for a continuance, on any subject or matter outside of the facts stated in their affidavits. Defendant's counsel proposing to show by W. W. Russell and all the others of said witnesses, that there was great public excitement, and that each of defendant's grounds for continuance were good in fact, the court expressly refusing to allow defendant to ask them any questions as to said showing unless it were on some point contained in such witness' affidavit made in support of said counter-showing.

(10.) Because the court erred in putting J. N. Maxwell on defendant as a juror over his objection, when it appeared upon inspection of the record that the name of J. N. Maxwell was not in the jury-box, but that Jesse M. Maxwell was, and in permitting testimony that Jesse N. Maxwell was intended by the commissioners when they put in the name of J. M. Maxwell. [It appeared that the juror was in fact Jesse N. Maxwell, and that there was no Jesse M.]

(11.) Because the court erred in admitting testimony of a witness, Sallie Lambert, over objection of defendant, that she knew defendant stole John Donaldson's money, and giving the particulars thereof. Defendant objected on the ground that the testimony did not relate to the case on trial, but to another case, and was liable to prejudice the minds of the jury against him, and was irrelevant and otherwise illegal, and that it was a matter to which the defendant was no party; and that no foundation was laid by first showing by proper evidence that there was such a case. [There was testimony that money had been stolen from Donaldson, and that deceased had accused defendant and Walter Williams of the theft. On this subject Sallie Lambert testified as follows: "Defendant told me that he got the money from Mr. Donaldson, he and his brother; he told me that they had lost something there which would be of great value if found. He told me where to look for it. I found some money there in a tin box. I saw Mr. Brockett count the money; he said there was $13.50. I carried it home, and showed it to deceased. She came to town and told Jesse Brockett about it. He advised us to give it to Mr. Donaldson. We sent for Mr. Donaldson; he came; said it was his, he thought, from the smell of it. He took the money and paid me $2.00 reward. Defendant never told me all about it till after we were in the lawsuit about it. Defendant said that he and Walter took it; said they went into the room and took the money; did not say what the

money was in in the room.    When they told me about the money, deceased was not present.    Deceased and I were living together at that time."]

(12.) Because the court erred in admitting the evidence of Mrs. Bailey and her husband, John Bailey, as to the unfriendly relations between Bailey and defendant, and the objection being that it was irrelevant and prejudicial to defendant.

(13.) Because the court erred in admitting the testimony of Mrs. Bailey as to what defendant's wife said in his presence, and that he had a pistol at her house on Tuesday night, over objection of defendant that it was irrelevant. [No sayings of the wife are set out in the testimony of Mrs. Bailey in the record.]

(14.) Because the court erred in admitting parol evidence as to what Mrs. Brockett stated in her preliminary or committing trial more than a week prior to the killing, as to the parties and particulars of the stealing the Donaldson money ; the defendant objecting on the ground that the brief of the evidence and defendant's statement, taken down on that trial, had not been accounted for, and that such brief was the highest evidence of what was sworn to and said in the statement on that trial ; and because the evidence was irrelevant and was illegal, because it involved a different transaction and a different crime ; and because legal foundation for it was not laid.    [On the committing trial of deceased, for killing a beef, she charged defendant and his brother with the larceny of Donaldson's money.]

(15.), (16.). Because the court erred in admitting Mrs. Durham, the wife of the principal actor and accomplice, as a witness to testify against this defendant, he objecting on the ground that she was neither competent nor compellable to testify against her husband or for him, either directly or indirectly in a criminal case, or for or against her husband's accomplice in the same case in which her husband was charged, and more especially while the case

against her husband is undisposed of, either by plea, verdict or judgment.

(17.) Because the court erred in instructing Mrs. Durham, after she was admitted by the court as a competent witness for all purposes, and after she had testified on direct examination by the state, that she need answer no questions that tended to criminate her husband ; and especially erred in instructing her that she need not answer the questions put by the defendant on cross-examination, as follows :  "Was your testimony given on the coroner's inquest exhonorating your husband true or false ?"

(18.) Because the court erred in admitting, over the objection of the defendant, the testimony of J. C. Donaldson as to when and how his father lost money, and giving the particulars thereof, and because the court erred in ruling it out for irrelevancy.

(19.) Because the court erred in refusing, upon request of counsel, to go into proof by witness on the stand that John Williams did not take the Donaldson money.

(20.) Because the court erred in refusing to charge, as requested by defendant's counsel in writing, as set out in said written requests hereto attached, exhibit "A," being eight pages marked on said pages as refused. Defendant alleges that each and every request therein was proper and legal, and should have been given as requested, and contends that the court did not give them in charge, but misapprehended and misunderstood their full force and effect when he entered thereon "refused," the ideas being embraced in charge. Defendant further contending that it is not sufficient to merely embrace the ideas of a written request, but that the whole request, if legal, should be given ; which requests here referred to are attached and referred to as part of this motion ; and to fully illustrate this ground defendant here attaches also a written charge of the court, and prays a full comparison of the refused request with the charge as given, which original charge is also attached as a part of this motion. [It

is unnecessary to set out the eight pages of requests or the general charge.]

(21.) Because the court especially erred in refusing to charge as follows: "If you believe that Mrs. Durham has testified to a certain state of facts upon a former investigation of this matter, and to the contrary on this trial, knowingly and wilfully, her testimony should be rejected entirely, unless it be corroborated by the facts and circumstances of the case, or other credible evidence; and such corroboration must be as to material facts, for corroboration as to immaterial facts is not sufficient.

(22.) Because the court erred in refusing to charge without qualification as follows: "That a person has been unlawfully killed will not of itself corroborate the testimony of the party who did the killing and has turned state's evidence, that another stood by aiding and abetting him." And the court erred in qualifying said charge, as follows: "But you are authorized to look to the evidence to see if there be any corroboration; and if there be any, you may believe it or not, according as the corroboration should satisfy your minds."

(23.) Because the court erred in charging that the jury could, if the evidence justified, find this defendant guilty of being an accessory before the fact on this trial.

(24.) Because the court charged that if on the investigation before the coroner's jury Mrs. Durham testified knowingly, falsely and wilfully as to material facts connected with the same killing in a manner different from what she has here sworn, the jury should not believe her unless corroborated by other witnesses or circumstances; but that if she testified falsely under duress or through fear for her life, the previous oath would not be wilful and would not discredit her testimony; also, that if she was an accessory after the fact, her testimony would require corroboration, but if she concealed the crime through fear for her own life, this would not discredit her testimony.

(25.) Because the court erred in refusing to charge as

follows: " Presence and participation in the act of killing a human being is not evidence of consent and concurrence in the perpetration of the act by a defendant charged as aiding and abetting in the killing, unless he had a felonious design or participated in the felonious design of the person killing."

(26.) Because the court erred in charging as follows: " I charge you that if you find from the testimony that the party named in the bill of indictment was unlawfully killed, and if you find from the evidence that the defendant on trial confessed that he did the killing, I charge you that such confession, corroborated by such proof of unlawful killing, would be sufficient to warrant you in finding a verdict of guilty." The defendant contends that such charge is contrary to the law, not warranted by lawful evidence, and withdrew from the jury the power and duty of deciding on the weight of evidence and the sufficiency of the corroborating evidence.

(27.) Because the court erred in charging as follows: " If you find from the testimony that just before or at the time of the killing deceased was saying anything, and you find that the prisoner confessed that he heard such sayings of the deceased at the time of the killing, I charge you that such confession of the prisoner of having heard what the deceased was saying is a corroborating circumstance of the truth of the confession; and I charge you that if there was a confession of guilt, then such a circumstance to which I have alluded, to-wit, sayings of the deceased at the time of the killing, confessed to have been heard by the defendant, would be sufficient corroboration of the confession of having killed the deceased to justify at your hands a verdict of guilty." Defendant contends that this charge was contrary to law, and restricted the power and duty of the jury in judging of the weight of evidence and the sufficiency of the corroboration, and is not justified by the lawful evidence.

(28.) Because the court erred in charging as follows:

"If you believe from the testimony that any witness or witnesses have been impeached by contradictory statements, contradictory testimony or otherwise, it is within your power to disregard such contradictions or impeachments and believe such witness any way."

(29,) (30.) Because the verdict was contrary to law and evidence.

The motion was overruled, and defendant excepted.

WRIGHT & POPE; GURLEY, TERRELL & MORRISON; H. G. TOWNSEND & SON; D. A. RUSSELL, for plaintiff in error.

JESSE W. WALTERS, solicitor general, for the state.

JACKSON, Chief Justice.

There are thirty grounds taken in the motion for a new trial, and on each of them error is assigned in this voluminous record. For want of time to examine them all with necessary care during the last term, the case was held up for further investigation during the vacation. These grounds of error may be classified under three general heads: first, errors assigned upon the rulings of the presiding judge preliminary to the trial on the merits; secondly, those in regard to the competency of witnesses and their testimony; and, thirdly, those respecting the charge and refusals to charge.

A motion was made by the defendant to continue the case, and error is assigned as well on the refusal to continue as on the mode of trying the issue of continuance.

1. The showing was made in writing, and the point is made that in such cases the law will not allow a counter-showing. The statute permitting a counter-showing is not restricted to the showings in parol, but is general, and embraces both kinds, written and verbal. Code, §3531. If confined to a reply to parol showings, the law would be worthless; because no matter how simple the ground,

it would be reduced to writing, and then it could not be controverted.

2. It is objected again, that the court should not have permitted the state to show, by counter-showing, that defendant's witness would not testify as defendant had sworn he would. We see nothing in the point. It is true that other witnesses, on a counter-showing, ought not to be allowed to testify that the facts which the absent witness, if present, would swear to, were not true, because that would be to try the whole case ; but the principle does not go the extent that by counter-showing it may not be proved that the witness, if present; would not testify as defendant swore he would.

The contradiction in such case is not of the absent witness, but of the defendant. It denies not what the absent witness would swear, but what the defendant says he would swear. It is a mere contradiction of defendant, such as that he did not subpœna the witness, or gave him leave to be absent, or that he is out of the state, or dead, or was not present when the crime was committed. The distinction is clear, and takes the point out of the ruling in 62 *Ga.*, 362.

3. Continuances are addressed to the sound discretion of the court, and should not be disturbed by a reviewing court, except where discretion is abused in granting or refusing them, and injustice done. We see no error in the third ground. Code, §3531.

4. We think, as matter of practice, that the court was right to confine the cross-examination of state's witnesses on the counter-showing to the facts sworn to by them. If they knew outside facts, wholly independent of what they swore for the state, their affidavits thereto could be easily procured by the defendant. So that he was not hurt, even if the court, as matter of practice, was wrong. But it was right ; because, if the door were opened wider, a world of prolixity and confusion, and a labyrinth of cross-questions, would enter and embarrass.

So there is no error in the ninth ground, and this concludes the questions on the motion to continue.   Excitement is on the same plane of discretion as other grounds, and the policy and public necessity of expediting trials of criminals which led the legislative mind to provide for extraordinary terms of court therefor, would seem to caution courts not to procrastinate on account of public excitement or other cause, where a fair trial can be had. There are in the record affidavits and counter-affidavits on the subject of excitement, and in regard to the accessibility of counsel to their clients in jail, and also in respect to their accessibility to testimomy taken before the inquest and committing court, somewhat conflicting and contradictory, but the presiding judge examined the subject with much patience and at great length, and has settled it.   From a re-examination of it here, so far as the record can and does bring here witnesses and their evidence, we see no abuse of discretion, but an earnest desire to administer the law and to mete out the measure of equal justice to the state and the defendant.

5. The special plea in abatement rests on the grounds that two of the grand jury had formed and expressed opinions adverse to the prisoner; that the court had excused wrongfully grand jurors, and thus made it necessary to summon five tales grand jurors; that the solicitor general *pro tem.*, who signed the bill of indictment, was the ordinary of the county, and also of counsel for the state, and that the whole grand jury and petit jury is illegal, because there was no legal precept directed to the sheriff to summon them to attend the court.   On demurrer to this plea to abate the prosecution for want of a sufficient accusation to put the defendant on trial, the demurrer was sustained, and the plea was stricken.   On this action of the court error is assigned.

It will be observed that there is no exhibit to the plea of any precept at all, so that the court can pass on its legality.   The allegation is "that no precept has ever

been issued or ordered, as the law directs, for the summoning or attendance of jurors at this special term, nor has any juror, either grand or petit, been summoned or sworn under a precept as required by law."

The above is not an allegation that there was no precept at all, but none such as the law directs or requires. We cannot pass upon it unless we saw it. Under our law, it is a very simple thing. It must contain the names of the persons drawn, and that is all the statute seems to require. Code, §3913. When the clerk hands that list to the sheriff, it is his duty to serve the persons named. We presume this was done. 34 *Ga.*, 270. Nothing to the contrary appears of record here. It is doubtful whether it be important to enquire about such matters at all. They relate, it appears, not to the securing of a fair and impartial jury for the defendant as much as to the mode of bringing the jurors to the court, and equalizing, by rotation, their duties among themselves. Such seems to be the ruling in 20 *Ga.*, 60. See also 14 *Ga.*, 43, and dissenting opinion in 57 *Ga.*, 427. Certainly we will not enquire into what excuses any of the grand jurors made to the court for not serving, and whether good excuses or bad, or none at all; nor will we enquire into the necessity of summoning tales grand jurors. These matters must be left with the superior courts; and if, on the trial of the criminal, all such details were open to investigation, the trial would be interminable.

The objection in the plea that two members of the grand jury who found the bill true, had formed and expressed an opinion, came too late. If there can be any objection to such a grand juror, it must be made before he acts on the case—not before the final verdict, but before the finding the bill. 3 Wendell, 313; see op. of Savage, C. J., and Marcy, J., and note to the case. It is too late to move on the trial before the traverse jury. The truth is that it is matter of comparatively little importance that grand jurors should not have formed opinions, because

v 69—3.

they only put the party on trial, and that after hearing only one side of the case. If, however, it be deemed important in a particular case to fight the prosecution *in limine*, diligence requires that the challenge be made before the bill is found. In this case the party could have done so. In the case *supra* from New York, the defendant was not recognized, and it was, therefore, doubtful that the defendant knew that the grand jury that found the bill would pass on his case, yet the court held the point too late. See also 6 Wendell, 386; 6 Serg & Rawls, 395; 1 Bish. Crim. Pro., 881.

The only remaining ground of the plea is the fact that the solicitor general *pro tem.*, who merely prepared and signed the bill of indictment, was the ordinary of the county and of counsel for the prosecution. Of course no man by our fundamental law may hold two offices of honor and profit at the same time, and the ordinary would be disqualified for election as solicitor general. At least he would be put to election of one or the other office ; but we do not think that the prohibition would extend to the mere act of preparing and signing an indictment *pro tem.* in the absence of the regular solicitor general, and that this fact should quash the proceeding. As to his being counsel for the prosecution, it strikes us as of no consequence. Often associate counsel draw the bill of indictment. The solicitor general *pro tem.* here was appointed by the court for this specific duty until the arrival of that permanent officer, and his signature to the bill of indictment after its preparation is the merest technicality, and cannot vitiate the entire proceeding. It may be doubted whether any signature is necessary of any solicitor general See Code, §4628 *et seq*. So the fourth ground was properly overruled.

6. The challenge to the array of forty eight traverse jurors is based on the same ground in regard to the want of a legal precept, and the views presented above will cover this point. It is not stated what sort of paper

or list was presented by the clerk to the sheriff. There must have been some sort of list or the jurors would not have been summoned and in attendance. The ruling in the 20th and 34th *Ga. supra*, must also cover this the fifth ground of the motion.

7. The sixth ground makes the point that a principal in the second degree cannot be tried until the case against the principal in the first degree has been disposed of. However it might be in the case of a mere accessory, a principal in the second degree may be tried before a principal in the first degree. 17 *Ga.*, 194. Of that offence this party was found guilty, and it does not matter, on a motion for a new trial of that issue, that he was also indicted as accessory.

8. The state need not elect on which count to try. 58 *Ga.*, 577.

9. The judgment of the court as a trior will not be reviewed by this court; its decision below is final, and no ground for a new trial. 47 *Ga.*, 598, *et seq.*

10. The middle name of a juror, or the initial of it, is immaterial. 8 *.Ga.*, 173, *et seq.*

11. The transaction in respect to the Donaldson money was admissible to show motive. The accused was interested in removing deceased if she knew facts connecting him with the larceny of that money. The court did not err in admitting Sally Lambert's evidence thereon.

12, 13. The testimony of Mrs. Bailey and of John Bailey, touching the unfriendly relations between the latter and defendant, considered in connection with his spending the night at Bailey's house during the *res gestae* (or near it) of the homicide, we think admissible, as well as his conduct and conversation while there. The facts sworn to may be mere circumstances, but often slight circumstances point the path which truth took, just as the bending straw will show the course of the wind as certainly as the prostrate oak the track of the hurricane. As slight circumstances they are relevant, and no error was committed in not ruling them out.

14. Two or three distinct legal points seem to be made in the 14th ground of the motion. If the written evidence, taken down by the magistrate, on the charge of cow-stealing by deceased, is the best evidence, and must be accounted for before parol proof can be admitted, then the point is made that the writing has not been accounted for sufficiently. The presiding judge held that it had been sufficiently accounted for, and the record does not disclose error in his judgment on that matter. Besides, the parol evidence of the statement of deceased was admitted as made in the presence and hearing of defendant. It would have been legal evidence, therefore, if not under oath at all, and could have been proven by parol. Is the rule narrower because it was a statement under oath? Besides, it is by no means certain that the mere substance of the testimony taken down in a case like this, is in law better evidence than the recollection of a competent and reliable witness. The relevancy of the evidence to this case has been already discussed. It had reference to a recent contest between the deceased and the parties charged with her homicide, and intended to show cause or motive for the deed, which is always relevant. On the general subject of the admissibility of parol evidence, and of the written evidence and value of each in such cases, see 54 *Ga.*, 156; 63 *Id.*, 600.*

15, 16, 17. The wife was not called to testify against her husband. The restriction on her competency is confined to such issues as involve his guilt. Our Code declares, " nor shall any wife be competent or compellable to give evidence for or against her husband" " in any criminal proceeding." Code, §3854, sub sec. 4. Besides, in *Stewart vs. The State*, 58 *Ga.*, 577, the point was necessarily under consideration, and ruled that a wife might corroborate her husband though an accomplice and indicted for the same offence—the issue being the innocence or guilt of another than her husband. If the accomplice may testify, why may not his wife? We see no error, therefore, in al-

*Compare *Robinson vs. State*, 68 *Ga.*, 833. (R.)

lowing Mrs. Durham to be sworn, certainly none under the caution that she need not answer any question tending to criminate her husband. See also, 41 *Ga.*, 613 ; 46 *Id.*, 626 ; 54 *Id.*, 625 ; 58 *Id.*, 87 ; 60 *Id.*, 509 ; 61 *Id.*, 305 ; 63 *Id.*, 410.

She swore to no confidential communication of her husband to her, as in 63 *Ga.*, 410, 416. Why could she not corroborate him on facts not coming to her from him in the confidence of the marital relation by act or word of his? So error does not appear in the 15th, 16th and 17th grounds of the motion.

18, 19. The time when the Donaldson money was lost and the manner of its loss, in order to show that it had been stolen, was relevant and admissible, because deceased had charged defendant with having it, or part of it— thus showing motive to get rid of her. But to go into a full trial of the defendant for the larceny, would have been to try another crime and to multiply issues. The qu'stion was not whether the defendant was guilty of larceny or innocent, but was he mad with her for charging it on him and thus had motive to kill her, after an unavailing effort to remove her without the state. The fact that the money was stolen was important to the issue of murder, because the charge by deceased that defendant had it was not such as to enrage him unless it was stolen. It was immaterial to this murder-issue whether defendant stole it or not. The charge, if he was innocent, would provoke his wrath more, perhaps, than it would if he were guilty of the theft. So error does not appear in overruling the 18th and 19th grounds of the motion.

20, 21, 22. This brings us to the errors assigned upon the refusal of the court to charge as requested. Since the two cases of *Hammock vs. The State*, argued and decided together, (52 *Ga.*, 397), the principle seems to have been undisputed that where the judge has fully and substantially covered the point of law requested, in accordance with the request, it need not be repeated in the precise verbiage of

the written request.   It would be but over and over to tell the jury the same thing, and would, or might be interminable, and tend to confuse rather than enlighten the jury.   So that two questions arise on the refusal to charge as requested in writing : first, is the written request law ; and, secondly, if law, had it been so substantially, fully and clearly given as to be, if again given, a mere repetition of the principle previously given in the direct charge.   So far as any specific point is made in the 20th ground of the motion, which is to the effect that the exact verbiage should be given as requested, it is satisfactorily disposed of by that and following cases.   So far as it asks this court to examine eight pages of requests, and compare them with as many or more pages of the general charge, it is enough to say that the plaintiff in error must himself specify his point of error and not put the reviewing court to the labor of hunting it out of such a mass of writing.   See Code, §4251, and many decisions thereon, *passim* from 1 *Kelly* down.

In the twenty-first ground the error is specified to the extent that the particular request is given, but the charge thereon is omitted.   The substance of the request is that if Mrs. Durham testified differently upon a former investigation, knowingly and wilfully, she ought not be believed on this trial, unless corroborated by a credible witness, or circumstances of the case or other credible evidence, on material points.   On hunting out for ourselves the charge on this point, we find that it is given substantially and fully as requested, but that the judge adds that if it appeared to the jury that she was then in fear of her life if she swore truly, and thus swore falsely under duress, the former statement under oath would not be wilful and would not impeach her evidence here.   The law on the point is fully and clearly given and no error is apparent to us in the ruling.   The addition or modification of the request is right, and was absolutely necessary to put the whole case before the jury.

The twenty second ground also specifies the error complained of. It is the refusal to give in charge, without qualification, that " the fact that a person has been unlawfully killed, will not of itself corroborate the testimony of the party who did the killing, and has turned state's evidence, that another stood by aiding and abetting him," and that the court erred in qualifying the charge as follows : " but you are authorized to look to the evidence to see if there be any corroboration, and if there be any, then you may believe it or not, according as the corroboration should satisfy your minds." It appears that the request was given exactly as asked, but the additional words were added, and the complaint is that those words were added. We can discover no error in the addition. The charge as an entirety on the point is, that the unlawful killing alone will not corroborate in such a case, but there may be other facts which, under the law (of course as elsewhere given) would corroborate, and the jury might consider them. See *McCalla vs. The State,* not yet reported, pamphlet, February Term, 1881, p. 32 ; 57 *Ga.,* 478 ; 64 *Id.,* 344 ; 52 *Id.,* 106, 397.

23. As the defendant was not convicted of being an accessory, but a principal, he was not hurt by the complaint that the court charged he could be found guilty of being an accomplice on this trial.

24. No plain *specification* of error is made in this ground. The charge as a whole will be considered hereafter.

25. The request was not in writing, but if it had been, it ought not to have been given. The " presence and participation in the act of killing," under the circumstances of this case, showed a felonious intent, and such presence and participation will, under any circumstances, be sufficient to convict of murder in the first or second degree, unless the defendant show an effort to stop the killing or his participation was in self-defense or other such justification. But where the killing is unlawful and another is

present and participates, he is guilty of murder, unless he show something to take him out of the rule. In this case he shows nothing.

26, 27. These grounds relate to confessions of defendant. They are to the effect that the *corpus delicti* with the confession is sufficient to convict, and especially where the confession could not have been made unless defendant had been present. Embodied in this confession are the sayings of deceased before and at the time of the assassination, and which could not have been known by defendant if he had not been there present so as to have heard what was said. 45 *Ga.*, 43; 57 *Id.*, 478; 63 *Id.*, 339.

28. This point is, that the court charged that notwithstanding the impeachment of a witness by contradictory statements or contradictory evidence, the jury could, if they saw fit, believe the witness any way. The meaning of the court undoubtedly was, that it was for the jury to consider the entire evidence and determine whether they would believe the witness who contradicted the assailed witness or the witness assailed. If the latter, he was not in their judgment impeached, because they believed his statement and rejected that of his assailants. Certainly they had a right to do this. 49 *Ga.*, 31.

On looking to the general charge, the law in respect to the right of jurors to believe a witness whom *they believe* impeached by his own contradictions, or that of others, is clearly laid down. It is the well settled rule that if a witness knowingly and wilfully swear falsely in a material matter, his testimony should be rejected entirely, unless corroborated by the facts and circumstances of the case, or other credible evidence. 53 *Ga.*, 365, 369. But it is for the jury to give credit to the impeaching testimony, or the witness sought to be impeached, and to determine for itself whether to believe the one or the other,—and it is for the jury to determine whether the first swearing was wilfully done, or under coercion, as put by the presiding judge in this case. The credibility of all witnesses is for

the jury; the weight of all evidence is for their judgment; and this has been extended even to embrace their personal knowledge of the character of witnesses sworn before them. *Head vs. Bridges*, September term, 1881, not yet reported. Pamph. p. 56.

In the case here, construing the charge given by request with the general charge, it amounts to this: When a witness is satisfactorily impeached by testimony you believe, then his evidence should be rejected unless corroborated on a material point; but whether he be impeached or not is for you to say, and though others contradict him, you may believe him and reject them; and though he swore differently on a former trial, you may still believe him on this trial if he swore under duress of bodily harm on the first, So construing it, we see no error in it. It must be observed, too, that the rule *nisi* was never granted by the presiding judge, and that the grounds stated in the motion are not verified at all by him. Pending the refusal to grant the new trial and the ·time within which a bill of exceptions was filed, he died; and we labor under the disadvantage of not having any explanatory note of his to this writ of error.

29, 30. On a careful review, however, of the whole case, long and laborious as it must have been to him, we detect no such error of law as requires a new trial. On the contrary, the law and the testimony both sustain the verdict; and on a new hearing of the same case on the same facts, we do not see how a conclusion of not guilty of murder could well be reached by any intelligent and impartial jury.

The motive to kill—the preparation to kill—first to remove ·otherwise, then to kill if necessary—the actual killing by another under such circumstances as must make murder—the presence of defendant aiding and abetting the deed—all are sufficiently substantiated to authorize the verdict, perhaps to require it.

Certainly it cannot be pretended with any sort of reason

that there is abuse of discretion in refusing to try it again because there is not evidence to sustain the finding. The charge as a whole presents the law of the case applicable to the proof fairly and fully, and our duty leads us to deny a new trial and to let the finding stand.

Judgment affirmed.