### 6050.   RICE *v.* CITY OF EATONTON.

1. Where a petition for certiorari in a criminal or quasi-criminal case contains no distinct allegation as to failure to prove the venue, the judge of the superior court may not grant the writ on the ground that the venue was not proved.

2. Objections to testimony, not made in the trial court, will not be considered by this court.

3. On the trial of one accused of the violation of a municipal ordinance in keeping intoxicating liquor for the purpose of sale, proof of one sale of such liquor by the accused may be sufficient to show the purpose of the keeping.

4. Where proof of general bad character of a witness has been introduced to impeach him, and no evidence is offered to sustain his character, and no corroborating circumstance is proved, it is nevertheless in the province of the jury, or of the court trying the case without a jury, as the case may be, to determine whether he has been impeached or whether his evidence is credible.

DECIDED DECEMBER 22, 1914.

Certiorari; from Putnam superior court—Judge Park.   October 17, 1914.

*W. T. Davidson,* for plaintiff in error.

*W. F. Jenkins, M. F. Adams,* contra.

WADE, J.   The defendant was convicted of the violation of a municipal ordinance providing that any person who shall "have or keep for the purpose of sale in any quantity any wine, whisky, beer, or other intoxicating liquors, or intoxicating bitters, shall be punished," etc.   He presented to the judge of the superior court, a petition for certiorari, which the judge refused to sanction, and error was assigned thereon.

The evidence set out in the petition for certiorari, which is included in the bill of exceptions, was as follows:  Charley Jordan, a witness for the city, testified that on Saturday preceding the trial he purchased a pint of liquor from the defendant, for which he paid the defendant 75 cents, and that the purchase was made "back of the pool-room."   He admitted that he had served in the chain-gang of Putnam county for burglary, for disturbing divine service, and for using a mule without the owner's consent, and also had served a term in the Bibb county chain-gang for gaming, and had paid a fine in the county court of Putnam, in July, 1914, for cheating and swindling in breaking a contract.   Burke, a witness for the city, testified, that he found the witness Charley Jordan at the house of Jordan's father on Mr. Stubbs's place on Sunday, in a drunken condition; that he passed the house, and, at the request of Jordan's father, took Jordan to Eatonton, in order to ascertain from him, when he became sober, where he obtained his liquor; that he (Burke) brought Jordan to town and put him in the lock-up, and kept him there until the time of the trial; that Jordan told him that he (Jordan) got a pint of liquor from the defendant Saturday night; that the witness saw Jordan in town on Saturday night; that there was no charge or warrant against Jordan, but he was held in the lock-up as a witness.   A witness for the defendant testified that he knew the witness Charley Jordan, and knew his general character, and that his general character was bad, and, from that character, he would not believe Jordan on his oath. There was no further testimony.

The petition for certiorari complains that the judgment finding the accused guilty was contrary to law and without evidence to

support it, and especially because a reputable citizen of the county had testified at the trial that he knew the witness Jordan's character to be bad, and, from that character, would not believe him on oath, and the State did not offer proof tending to sustain the character of the witness. This is the only specific assignment of error in the petition. There is no complaint therein that the evidence failed to show that the crime was committed within the limits of the city of Eatonton, nor does it appear that at the trial any objection to the testimony of Jordan was interposed on account of the manner in which the evidence was obtained.

Before the passage of the act of 1911 (Acts of 1911, p. 149), if it did not affirmatively appear from the record that proof of the venue had been made, a reversal followed as a matter of course. *Akridge* v. *State,* 9 *Ga. App.* 396 (71 S. E. 494) ; *Walden* v. *State,* 9 *Ga. App.* 584 (71 S. E. 945) ; *Williams* v. *State,* 9 *Ga. App.* 169 (70 S. E. 891). Since that act, however, not only will no judgment in a criminal case be reversed by the Supreme Court or the Court of Appeals for failure to prove the venue, except where the particular point has been specifically raised by a ground of the motion for a new trial (*Marshman* v. *State,* 138 *Ga.* 864, 76 S. E. 572), but the act declares that no judge of the superior court shall grant or sustain the writ of certiorari in a criminal or quasi-criminal case, on the ground that the venue was not proved, unless there is a distinct allegation in the petition for the writ of certiorari that there was a failure to prove the venue, and a specific assignment of error for this reason.

So, also, where testimony is objected to in the brief of counsel in this court, for the alleged reason that it was illegally obtained, by intimidation, coercion, or for any other reason, and it does not appear from the record that this objection was made at the trial, and it does not even appear that error was specifically assigned on this ground in the petition for certiorari, this court can not consider the objection. *Davis* v. *State,* 4 *Ga. App.* 318 (61 S. E. 404) ; *Williams* v. *State,* 7 *Ga. App.* 33 (65 S. E. 1097) ; *Butler* v. *State,* 14 *Ga. App.* 450 (81 S. E. 370).

It is argued by counsel for the plaintiff in error that the judgment of the recorder finding the defendant guilty under an ordinance making it illegal to "have or keep for sale" whisky or other intoxicating liquors, etc., was unauthorized, since the evidence dis-

closed only one sale of whisky, and this would be insufficient to sustain a charge of having and keeping for the purpose of illegal sale. This point has so often been passed upon by the Supreme Court and this court that it appears to us that the question is no longer an open one in Georgia. In *Rooney* v. *Augusta,* 117 *Ga.* 709, the Supreme Court held that one might be convicted under an ordinance of a municipal corporation prohibiting the having or keeping intoxicating liquors for the purpose of illegal sale, if it be shown that one sale was had. "Such a sale shows conclusively that at least the liquor sold was kept on the particular occasion for the purpose of illegal sale." In *Reese* v. *Newnan,* 120 *Ga.* 198 (45 S. E. 72), it was held that "proof, on the trial of one accused of keeping liquor for illegal sale, that the accused made an illegal sale of liquor is sufficient to show that the liquor sold was kept on the particular occasion for the purpose of illegal sale." In *Robinson* v. *Americus,* 121 *Ga.* 180-182 (48 S. E. 924), the court says that proof of a single sale was sufficient to establish the unlawful purpose for which a defendant kept liquors. Following these decisions this court has repeatedly reiterated the same doctrine. See *Sawyer* v. *Blakely,* 2 *Ga. App.* 159 (58 S. E. 399); *Coggins* v. *Griffin,* 5 *Ga. App.* 1 (62 S. E. 659); *Cooper* v. *Fort Valley,* 13 *Ga. App.* 169 (78 S. E. 1097).

As to the special exception that the judgment of the recorder was illegal because a reputable citizen testified to the bad character of the witness for the city, and that he would not believe this witness on oath, this too is no longer an open question in Georgia. It is true that section 5882 of the Civil Code provides that a witness may be impeached by proof of his general bad character, and that where thus impeached he may be sustained by similar proof of character, and section 5884 provides that if a witness swears wilfully and knowingly falsely, his testimony ought to be disregarded entirely, unless corroborated by circumstances or other unimpeached evidence; but section 5884 further declares that it is for the jury to determine the credit to be given the testimony of a witness where he is impeached for general bad character or for contradictory statements out of court; and the Supreme Court and this court have repeatedly held that the jury alone must decide whether or not a witness has been successfully impeached, or, in other words, whether they would accept the testimony of the witness. In *Will-*

*iams* v. *Slate,* 69 *Ga.* 11 (28), the court says: "When a witness has been impeached by testimony which the jury believe, his evidence should be rejected, unless corroborated on a material point. But whether he be impeached or not is for the jury to say." In *Powell* v. *State,* 101 *Ga.* 9-10-11 (29 S. E. 309, 65 Am. St. R. 277), the Supreme Court clearly indicated the distinction between an impeachment and an attempt to impeach, and explained the seeming conflict between decisions ruling that it is the duty of the jury to disregard the testimony of an impeached and uncorroborated witness, and those decisions which hold in substance, that, though a witness be impeached and not afterwards corroborated, yet it must still be a question for the jury whether he is to be believed or not, notwithstanding the "impeachment." As said in the 5th headnote in that case, "a witness is never impeached, in contemplation of law, until there is a mental conviction, produced upon the mind of the jury by proof, that he is unworthy of credit," and further that it is the exclusive province of the jury to determine the credibility of all witnesses, and "when an effort is made by any of the methods pointed out by law to impeach a witness, the jury then become the triors of the credibility, respectively, of the witness sought to be impeached, and of the witness or witnesses by whose testimony the impeachment is attempted; and, accordingly, they have the right, under all the attendant circumstances and conditions, to determine whether credit shall be given to the witness whose credibility has been attacked, or to the witness by whose testimony such attack is made, and thereupon decide whether the witness has or has not been impeached." In *Huff* v. *Brown,* 104 *Ga.* 523 (30 S. E. 809), it was said: "When a witness has been successfully impeached by testimony which the jury believes, then, of course, his evidence should be discredited, unless he is corroborated on some material point, or his credit restored by other testimony, as provided by law in cases of impeachment. But whether or not a witness has been successfully impeached is a question for the jury. The jury have a right to believe the witness who is attacked rather than the witness brought to impeach him. Hence it does not follow that while testimony may be submitted for the purpose of impeaching a witness, his testimony is thereby necessarily destroyed." In *Brown* v. *Stale,* 10 *Ga. App.* 50 (72 S. E. 537), an attempt was made to impeach a witness both by proof of

contradictory statements and by proof of bad character; and the court said, in reference to the weight to be given to the testimony of such a witness, that the jury had the right to believe his evidence notwithstanding the impeachment and in the absence of any corroboration, and that section 5884 of the Civil Code was not intended to abridge in any degree the absolute right of a jury to determine as to the credibility of witnesses. As stated in that case, "While section 5884 of the Civil Code (1910) declares that, 'if a witness swears wilfully and knowingly falsely, his testimony ought to be disregarded entirely, unless corroborated by circumstances, or other unimpeached evidence,' yet the jury may credit even an impeached witness without any corroboration. The whole question of the credibility of witnesses is wisely left to the jury under any and all circumstances, and, though Ananias and Sapphira spoke again, the law would not strike them dead, but would leave their testimony to be weighed and accepted or rejected by the jury. In this case there were circumstances of corroboration." In *Solomon* v. *State,* 10 *Ga. App.* 469 (73 S. E. 623), it was held: "It is within the power and right of a jury to believe a witness, no matter what effort may have been made to impeach him, or what testimony has been presented for that purpose, and even though the witness be not corroborated."

Hence it is apparent that regardless of whether or not the evidence showing that the witness Jordan was seen in the town of Eatonton on the day when he testified that he purchased the intoxicating liquor from the defendant be considered as corroborating to any extent his testimony, the judge of the superior court did not err in refusing to sanction the certiorari for the reason that the recorder, notwithstanding the proof as to the bad character of the witness for the city, accepted his testimony as true and rendered a judgment of guilty thereon. Whether or not the witness had sworn "wilfully knowingly and falsely" was a question for determination by the recorder; and he had the same right that a jury in any court would have had to accept the testimony of a witness shown to be of bad character, if he nevertheless believed his evidence was the truth, and notwithstanding such evidence was absolutely uncorroborated by proof of good character or by other proof. This court held in the case of *Ramsey* v. *Atlanta,* ante, 345 (83 S. E. 148), that, "Whether witnesses were successfully im-

peached by proof of contradictory statements, or in any other manner authorized by law, was a question for determination by the recorder, who might believe the witness attacked." And this is true where no attempt whatever is made to re-establish the witness by proof of good character or of corroborating circumstances.

*Judgment affirmed.*