### 7724.   BISHOP *v.* THE STATE.

1-2. There was sufficient evidence to authorize the verdict. A judgment overruling a motion for a new trial will not be reversed, on the ground that the verdict was contrary to or unsupported by evidence, because a witness on whose testimony the verdict was based "impeached his own testimony."

3 Refusal to direct a verdict is never an error.

4. The admission of testimony relating to the finding of whisky in the possession of the accused, who was charged with the sale of intoxicating liquors, was not cause for a new trial. Even if the admission of this testimony was error, it was rendered harmless by the charge of the court, which expressly withdrew it from the consideration of the jury.

5. In the assignment of error as to the instruction withdrawing from the consideration of the jury the testimony relating to the possession of whisky by the accused, it is not stated why the instruction was error; and it is not apparent that the accused could have been harmed by it.

6. Blindness of the accused, which prevented him from seeing the witnesses who testified against him, and which, it was alleged, placed him at a disadvantage in other respects on his trial, does not entitle him to a new trial.

DECIDED OCTOBER 24, 1916.

Indictment for sale of liquor; from Decatur superior court— Judge Cox. July 3, 1916.

*H. G. Bell,* for plaintiff in error.

*R. C. Bell,* solicitor-general, *F. A. Hooper,* contra.

WADE, C. J. 1. The general grounds of the motion for a new trial are without merit, since there was direct evidence, which the jury found to be credible, sufficient to authorize the verdict.

2. In the 4th and 5th grounds it is complained that the "verdict is decidedly contrary to the evidence," and "is not supported by the evidence," for the reason that only one witness testified that he bought whisky from the defendant, and that witness "impeached his own testimony;" that this witness testified "in the next case called for trial, the same day and the same afternoon," that he had previously sworn falsely before the grand jury in that case (not the case now under consideration); and that, the sole witness for the State being impeached, a verdict of guilty against the defendant ought not to stand upon his testimony. "While section 5884 of the Civil Code (1910) declares that, 'if a witness swears wilfully and knowingly falsely, his testimony ought to be disregarded entirely, unless corroborated by circumstances, or other unimpeached evidence,' yet the jury may credit even an impeached witness without corroboration. The whole question of the credibility of witnesses is wisely left to the jury under any and all circumstances, and, though Ananias and Sapphira spoke again, the law would not strike them dead, but would leave their testimony to be weighed and accepted or rejected by the jury." *Brown* v. *State,* 10 *Ga. App.* 50 (72 S. E. 537). See, on the general subject, *Rice* v. *Eatonton,* 15 *Ga. App.* 505, 508 (83 S. E. 868). The following rulings have also been made on this subject: "It is within the power and right of a jury to believe a witness, no matter what effort may have been made to impeach him, or what testimony has been presented for that purpose, and even though the

witness be not corroborated." *Solomon* v. *State,* 10 *Ga. App.* 469
(73 S. E. 623). "The credibility of witnesses is a matter so en-
tirely for the jury that the question as to whether a witness has or
has not been successfully impeached is a matter for their exclusive
determination." *Smith* v. *State,* 17 *Ga. App.* 298 (86 S. E. 660).
"Even though a witness may admit having previously sworn falsely
regarding the facts and circumstances attendant upon an occur-
rence, he may still be believed by the jury." *Brown* v. *State,* 17
*Ga. App.* 402 (87 S. E. 155). And see *Ware* v. *State,* ante, 107.

3. There is no merit in the ground of the motion for a new trial
which assigns error because of the failure by the court to direct a
verdict in favor of the defendant. It is never error to refuse to
direct a verdict.

4. There was no error in admitting testimony, over objection
of counsel for the defendant, to the effect that the defendant's house
was searched and several bottles of whisky were found therein, not-
withstanding the fact that the whisky itself was not produced in
court. Proof as to the possession of whisky by the defendant at or
about the time of the alleged sale tended to corroborate the direct
evidence showing a sale, and was not irrelevant. Even if the testi-
mony touching the arrest of the accused and the seizure of whisky
(which the witness understood was to be used in connection with a
case not then on trial) was irrelevant, because the time when the
whisky was found in the defendant's possession was not definitely
shown, the error, if any, in admitting this testimony was suf-
ficiently cured by its withdrawal from the jury by the charge of
the court.

5. The 10th ground of the motion for a new trial alleges that
a certain excerpt from the charge of the court (the part in which
the court withdrew from the consideration of the jury the testi-
mony referred to above) was erroneous, but fails to point out in
what particular the charge complained of was erroneous, and it
does not appear that the accused could have been harmed by it.

6. In the 11th ground of the amendment to the motion for a
new trial it is contended that the verdict should be set aside "be-
cause the defendant did not see the witnesses testifying against
him, in that the defendant was blind, and further for the reason
that defendant's physical disability, in his being blind, placed him
in position that he was denied a fair trial for the reason that de-

fendant was not on equality with the witnesses testifying against
defendant, in that defendant could not procure evidence to meet
the contentions of the witnesses for the State." No comment on
this ground of the motion is necessary, further than to say that
if it is meritorious, the blind would ordinarily be wholly exempt
from punishment for the violation of any penal statute. Pursuing
the idea of the plaintiff in error to its logical result, it would seem-
ingly require not only that the blind defendant be tried by a jury
of his peers, *all blind,* but perhaps that not only the goddess of
justice herself, but the presiding judge and the other court officers
officiating in the trial, should labor under the same affliction!
A plea of mental blindness, or insanity, may sometimes avail, but
a plea of physical blindness, to avoid conviction for crime, would
be at least novel; and besides, no such plea was filed in this case.

*Judgment affirmed.*